SPROLES, Appellant,

v.

SIMPSON FENCE COMPANY, Appellee.

[Cite as *Sproles v. Simpson Fence Co.* (1994), 99 Ohio App.3d 72.]

Court of Appeals of Ohio,
Warren County.

No. CA94–07–058.

Decided Dec. 12, 1994.

74

*Eddie Lawson,* for appellant.

*Rendigs, Fry, Kiely & Dennis, Wilson G. Weisenfelder, Jr.,* and *Fern Theresa Schmitz,* for appellee.

---

WALSH, Judge.

Plaintiff-appellant, Charles Sproles, appeals a decision of the Warren County Court of Common Pleas granting a motion for summary judgment filed by defendant-appellee, Simpson Fence Company.

In August 1985, appellant contracted with appellee to have a fence with an electric gate installed on his property. After appellee installed the fence and gate, appellant hired a third party to install the electrical service for the operation of the gate. The mechanism for operation of the gate is manufactured by Stanley Products. Approximately two months after installation, appellant began having problems with the gate. The gate would occasionally begin operating on its own, opening and closing unexpectedly. After several unsuccessful attempts to reach Allen Simpson, appellee's President, appellant contacted someone from Middletown Door Sales to service the gate.

On or about April 2, 1991, appellant's wife informed him that the gate had unexpectedly begun to close while she was proceeding through it. Appellant then observed the gate for approximately thirty minutes in order to determine what was wrong with it. Appellant was aware that the gate had operated in this fashion in the past, opening and closing unexpectedly. Appellant attempted to grease the chain to the gate, which was powered by the motor, using his hand to apply the grease. Although appellant knew that he could have turned off the power to the gate, thereby eliminating any possibility that the gate would unexpectedly begin to operate, causing the chain on which he was placing the grease to begin moving, he did not do so. At some point, the motor unexpectedly engaged and the chain began moving. Appellant's hand became caught in the chain and was pulled into the mechanism operating the gate, causing the tip of his finger to be severed.

On February 19, 1993, appellant filed a complaint against appellee, alleging that appellee provided him with inadequate warnings regarding the hazards of using the electric gate, that the installation of the gate was defective, and that appellee violated the Ohio Consumer Sales Practices Act ("OCSPA"). Appellee filed a motion for summary judgment on March 16, 1994, and the trial court granted the motion on June 8, 1994. On appeal, appellant presents three assignments of error for review.

In his first assignment of error, appellant asserts that the trial court erred in granting summary judgment to appellee on the basis that appellant's conduct constituted a voluntary and unreasonable assumption of a known risk. We disagree.

Summary judgment is to be granted where there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and when construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. In addition, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

Appellant claims that appellee failed to instruct him as to the installation, operation, and hazards associated with the use of the electric gate, and that he was injured as a direct and proximate result of this inadequate warning. The record indicates that a caution sign was affixed to the gate, warning users to stay clear of the gate, and appellant was aware of and understood this warning sign. Simpson claims that, even though he did not actually discuss the safety precautions and warnings associated with the gate with appellant, he did instruct appellant in the use and operation of the gate, and he gave appellant a booklet prepared by Stanley Products, which contained safety instructions for the gate. Appellant, however, denies that he was ever given any booklet containing safety instructions, so we must construe this evidence in appellant's favor, as the party opposing summary judgment.

Appellee contends that assumption of the risk is a complete defense to recovery when it is express or primary or when there are claims of inadequate warning under R.C. 2307.76. See *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. The trial court, relying upon appellee's argument that appellant's claim was essentially one of inadequate warning under R.C. 2307.76, found that appellant's assumption of the risk thus barred his recovery. However, R.C. 2307.76 only applies to a claim of inadequate warning brought against a manufacturer; both parties concede that appellee is a "supplier," not a "manufacturer," for purposes of a products liability action.[1] Thus, the trial court

---

1. R.C. 2307.71(O)(1)(b) defines "supplier" as "[a] person that, in the course of a business conducted for the purpose, *installs*, repairs, or maintains any aspect of a product that allegedly causes harm." (Emphasis added.) Therefore, as the installer of the electric gate,

incorrectly relied upon R.C. 2307.76 in granting summary judgment to appellee on appellant's inadequate warning claim; however, such error was harmless since, as discussed below, summary judgment on this claim was supported on other, valid grounds recognized by the trial court.

R.C. 2315.20(B)(1) provides that express or implied assumption of the risk may be asserted as an affirmative defense to a products liability claim. Express, or primary, assumption of the risk is a judicially created doctrine whereby the defendant owes no duty to protect the plaintiff from certain risks that are considered so inherent in some activities that they cannot be eliminated. See *Collier v. Northland Swim Club* (1987), 35 Ohio App.3d 35, 518 N.E.2d 1226, citing *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. In contrast, implied, or secondary, assumption of the risk encompasses those situations where the defendant owes some duty to the plaintiff, but it is the plaintiff's voluntary consent to or acquiescence in an appreciated, known, or obvious risk to his safety that will act as a defense to the plaintiff's products liability action. See *Collier*, 35 Ohio App.3d at 37, 518 N.E.2d at 1228.

Pursuant to R.C. 2315.20, express or implied assumption of the risk stands as an absolute bar to recovery in product liability actions, unless, as in this case, implied assumption of the risk is asserted as an affirmative defense against a supplier. In that case, R.C. 2315.19, Ohio's comparative negligence statute, applies and a plaintiff's assumption of the risk is to be measured against the negligence of the defendant.[2]  R.C. 2315.20(B)(3).

Although the issue of assumption of the risk is ordinarily a question of fact to be decided by the jury, *Syler v. Signode Corp.* (1992), 76 Ohio App.3d 250, 253, 601 N.E.2d 225, 227–228, in certain cases, it may be appropriate to grant summary judgment to a defendant on the basis that the plaintiff voluntarily assumed a known risk. See *Riley v. Burnup & Sims Comtec, Inc.* (Sept. 12, 1991), Allen App. No. 1–90–113, unreported, 1991 WL 216783. See, also, *Evanoff v. Grove Mfg. Co.* (Nov. 10, 1994), Portage App. No. 93–P–0014, unreported, 1994 WL 652629 (grant of summary judgment to defendant upheld in products liability action based upon claim of failure to warn or inadequate warning where "the facts

whose operating mechanism was manufactured by Stanley Products, appellee is considered a "supplier."

2.  Ohio's comparative negligence statute provides in pertinent part as follows:

"Contributory negligence or implied assumption of the risk of a person does not bar the person or his legal representative as complainant from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence or implied assumption of the risk of the complainant or of the person for whom he is legal representative was no greater than the combined negligence of all other persons from whom the complainant seeks recovery."

could only support the conclusion that [plaintiff] had assumed the risk of injury"). In a products liability case such as this one where the applicable defense is implied assumption of the risk and the comparative negligence statute is thus involved, summary judgment is properly granted in favor of the defendant where, pursuant to the criteria of Civ.R. 56(C), the trial court could find as a matter of law that the plaintiff's own negligence (considering factors of assumption of the risk) outweighs any negligence of the defendant. See *Riley, supra.*

In this case, the record indicates that appellant was aware of the risk of the gate opening and closing unexpectedly, as it had done so several times in the past. In fact, he knew that the gate had malfunctioned in this manner within the past hour. Further, appellant understood the moving parts of the gate and was aware that it was powered by electricity. He knew of the power switch to turn off the electricity to the gate in order to prevent it from operating on its own; nevertheless, he chose not to deactivate it before greasing the chain.

The trial court thus determined that "reasonable minds can only conclude that [appellant] knew of the risk and the one way to absolutely avoid it, however, [he] elected to proceed despite that risk." Therefore, the trial court was correct in granting summary judgment to appellee with regard to appellant's inadequate warning claim, as reasonable minds could only conclude that appellant's conduct constituted a voluntary and unreasonable assumption of the risk which outweighed any negligence on the part of appellee in neglecting to fully warn and instruct appellant of the safety hazards involved. See *Evanoff; Riley, supra.* Appellant's first assignment of error is accordingly overruled.

In his second assignment of error, appellant asserts that the trial court erred in granting summary judgment to appellee on appellant's claim that appellee's installation of the gate was defective and unsafe. However, the record indicates that the trial court was correct in its finding that appellant presented no competent evidence of any defect in the installation.

Appellant specifically argues that Simpson's failure to warn or instruct appellant, after installation, on the safety features and hazards of the gate amounted to a defective or unsafe installation. However, it is evident from reading appellant's brief and the arguments contained therein that, although his second assignment of error is couched in terms of a defective installation claim, it is really a mere restatement of the inadequate warning claim discussed in the first assignment of error. Therefore, based upon the authority cited in connection with our discussion of appellant's first assignment of error, appellant's second assignment of error is accordingly overruled.

In his third assignment of error, appellant asserts that the trial court erred in granting summary judgment to appellee on appellant's claim under the OCSPA. We disagree.

Pursuant to the OCSPA, no supplier shall commit an unfair, deceptive, or unconscionable act or practice in connection with a consumer transaction. R.C. 1345.02 and 1345.03. R.C. 1345.02(B) and Ohio Adm.Code Chapter 109:4–3 provide a nonexclusive list of deceptive or unfair acts or practices. R.C. 1345.03(B) lists several factors considered relevant to a determination of whether a given act or practice is unconscionable. However, the record contains no evidence that appellee's conduct in any way amounted to a deceptive, unfair, or unconscionable act or practice prohibited by the OCSPA.

A pattern of inefficiency, incompetency, and continual stalling, resulting in the evading of a contractor's legal obligations to the consumer, is sufficient to establish an unconscionable act or practice in violation of R.C. 1345.03(A). *Brown v. Lyons* (C.P.1974), 43 Ohio Misc. 14, 21, 72 O.O.2d 216, 219–220, 332 N.E.2d 380, 386; *Pearson v. Tom Harrigan Oldsmobile–Nissan* (Sept. 16, 1991), Montgomery App. No. 12411, unreported, 1991 WL 214228. Appellant argues that he repeatedly called appellee in order to attempt to obtain parts and service on the gate after installation by appellee, but to no avail.

However, appellant has not presented any evidence of the existence of a maintenance or service contract between the parties. To the contrary, an examination of the written proposal entered into by the parties on August 3, 1985 indicates that the contract between the parties contemplated only that appellee would furnish material and labor for the installation of the fence and gate. Therefore, since appellee was under no legal obligation to continue to service or repair the gate after installation, appellee's failure to respond to appellant's requests for service and maintenance do not constitute an unconscionable act or practice under the OCSPA.

We find that appellant has failed to meet his burden under Civ.R. 56 to create any genuine issues of material fact with regard to the existence of a deceptive, unfair, or unconscionable act or practice. Therefore, summary judgment for appellee on appellant's claim of a violation of the OCSPA was proper. Furthermore, even if appellant had met his burden by presenting evidence of the existence of a deceptive, unfair, or unconscionable act or practice, an action for violation of the OCSPA would be barred by the statute of limitations provided in R.C. 1345.10(C). This section provides that an action for violation of the OCSPA must be brought within two years "after the occurrence of the violation which is the subject of suit." Appellant's action is based upon his claims that appellee failed to adequately warn him of the safety hazards associated with the gate, and

that the installation of the gate was defective. Thus, the trial court was correct in finding that the "occurrence of the violation," if there was one, was in 1985 when the gate was installed by appellee and not in April 1991 when appellant sustained his injury.

While the provisions of the OCSPA covering actions for rescission of consumer contracts are governed by the discovery exception to the two-year statute of limitations, claims for damages, such appellant's claim in this case, asserted under the OCSPA, do not fall within the discovery exception; R.C. 1345.10(C) sets forth an absolute two-year statute of limitations for such damage actions. *Cypher v. Bill Swad Leasing Co.* (1987), 36 Ohio App.3d 200, 202, 521 N.E.2d 1142, 1144. Appellant's claims under the OCSPA are thus clearly barred by the applicable statute of limitations. Appellant's third assignment of error is accordingly overruled.

*Judgment affirmed.*

FRED E. JONES, P.J., and WILLIAM W. YOUNG, J., concur.