OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral argument to this court. Plaintiff-Appellant, Justin Knopp, appeals the decisions of the Columbiana County Court of Common Pleas which granted summary judgment to Defendants-Appellees, Cincinnati Machines, Inc., and UNOVA Industrial Automation Systems, Inc.[1] This appeal involves a variety of issues ranging from the existence of a duty or defect to whether Appellees' actions proximately caused Knopp's injuries. We conclude that Knopp assumed the risk of injury when he reached over the guards and that his negligence when doing so clearly outweighs any negligence by Appellees. Accordingly, we will not address the many other issues in this appeal.
 {¶ 2} Appellees argue that they are not the proximate cause of Knopp's injuries since he assumed the risk of injury. Knopp claims he did not assume the risk since he subjectively believed he was required to encounter the risk in his normal job duties. But the evidence demonstrates that his subjective belief was unreasonable. Assumption of the risk is a complete bar to Knopp's strict liability claims again UNOVA, but not to his negligence claims against CMI and UNOVA. Nevertheless, no reasonable fact-finder could conclude that Knopp's negligence was not greater than the combined negligence of both CMI and UNOVA. Accordingly, his other claims against Appellees are also barred. The trial court's judgment is affirmed.
 Facts {¶ 3} Knopp was seriously injured in an industrial accident on his first day working at Vari-Wall Tube Specialists, Inc. Vari-Wall Tube uses industrial milling machines to manufacture tubes and tubular products, such as ball bats and bicycle parts. Knopp was hired as a laborer on the machines making these parts.
 {¶ 4} On the day he was injured, Knopp arrived at Vari-Wall Tube at 7:00 a.m. Upon arriving, he met with Vari-Wall Tube's human resources manager, Paul Love, who had Knopp fill out some paperwork, showed him the time-clock, and informed Knopp of basic plant rules. Love had Knopp watch a safety video which stressed two basic rules: 1) do not touch any moving parts and 2) do not stick your hands in the machines. After this introduction, Steven Griffin, a team leader at Vari-Wall Tube, trained Knopp how to use the machines he would be operating.
 {¶ 5} Griffin taught Knopp to use two machines, one of which was the machine that injured Knopp. This machine is a hypowermatic milling machine, a general purpose milling machine which could be used to mill a variety of different kinds of products depending on the types of fixtures attached to it. It was tooled to cut a notch into the top of a metal tube. Those tubes were inserted into slots on the right hand side of the machine. The operator then used levers at the operator's station to move the tubes from the right-hand to the left-hand side of the machine. As they made this pass, spinning cutters made a notch in the tubes. The tubes then slid back to the right-hand side of the machine and were removed by the operator. Knopp was taught to clear debris only from the right-hand side of the machine by using an air hose on the area after each pass.
 {¶ 6} When Knopp used the machine, it had a variety of safety features. Some of these were obvious. For example, the guards around the left-hand side of the machine, where the cutters were located, and other signs on the machine said, "Caution: Keep Your Hands Clear". Other safety devices were not so obvious. For instance, in the operator's area there were a variety of buttons. Some of these buttons would shut off the entire machine; others would just stop the cutters from spinning. In addition, there was a lockout/tagout system to be used when the machine was shut down so it would not be accidentally started. Knopp was aware of the obvious safety devices, but he did not know what the various buttons did. Furthermore, he was told that he should never turn off the machine, even at the end of his shift. Knopp understood that the machine should only be turned off at the end of the evening shift.
 {¶ 7} Knopp was also informed of the type of clothing he should wear in the plant. After a certain period, Knopp would be issued a uniform. Until that time, he was to wear his street clothes. He was also told that he should wear goggles, wrist nets, and gloves, although only the goggles were required. Furthermore, Love told Knopp that he should not wear a long-sleeved shirt while working, although this was also not a requirement. At the time of his injury, Knopp was wearing a long-sleeved, button-down flannel shirt over a T-shirt and goggles.
 {¶ 8} Griffin trained Knopp on the two machines for approximately four hours, spending two of those hours on the machine described above. At 11:00 a.m., Knopp was finished training and took a break for lunch. He began using the machine and making parts at 11:45 a.m. He did so unsupervised until he completed filling the order he was working on at about 3:30 p.m. Knopp's shift ended at 4:00 p.m. and Griffin told Knopp that he should not clock out early. Instead, Griffin told Knopp to "sweep up" before he clocked out.
 {¶ 9} Knopp testified that while "killing time", he noticed that there was debris in the left-hand side of the machine, where the cutters were located. He had not noticed debris in this area at the beginning of his shift. Knopp was unaware that the machine was built to automatically clean out this area. He decided to clean this area out with the air hose. While the machine was running and the cutters were spinning, Knopp held the air hose over the guard on this side of the machine with his right hand and tried to blow it out, but this did not work. He then switched the air hose to his left hand and tried reaching for the debris with his right hand while holding the air hose in the machine with his left. While he was doing so, Knopp's shirt got caught in the cutters and his right arm was pulled into them. This caused serious injuries to his right arm, rendering it virtually useless below the elbow.
 {¶ 10} Knopp filed a complaint against UNOVA, the original manufacturer, CMI, which sold the used machine to Vari-Wall Tube, and Dayton Machine Tool, which tooled the machine after it was bought by Vari-Wall Tube. That complaint stated actions in both strict liability and negligence against each of these three defendants. Each of the defendants subsequently filed motions for summary judgment. UNOVA and CMI argued, among other things, that they were not the proximate cause of Knopp's injuries since he voluntarily assumed the risk of the injury.
 {¶ 11} The trial court granted summary judgment to each of the defendants. It concluded that Knopp voluntarily assumed the risk when he reached over the guard by putting himself into a known danger.
 {¶ 12} Knopp appeals from the decisions granting summary judgment to UNOVA and CMI. He has not appealed the trial court's decision to grant summary judgment to Dayton Machine Tool.
 Standard of Review {¶ 13} Knopp argues the following two assignments of error on appeal:
 {¶ 14} "The trial court erred in granting summary judgment in favor of defendant, Cincinnati Machines, Inc., on the issue of proximate causation/assumption of risk."
 {¶ 15} "The trial court erred in granting summary judgment in favor of defendant, Milacron/UNOVA, on the issue of proximate causation/assumption of risk and consumer expectation."
 {¶ 16} When reviewing a trial court's decision to grant summary judgment, we apply the same standard used by the trial court and engage in a de novo review. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ. R. 56, summary judgment is proper only when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer (2000),90 Ohio St.3d 388, 390. A fact is material when it affects the outcome of the suit under the applicable substantive law.Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301,304.
 {¶ 17} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresherv. Burt (1996), 75 Ohio St.3d 280, 296. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 Proximate Cause {¶ 18} In each of their motions for summary judgment, CMI and UNOVA argued that they were not liable since their conduct was not the proximate cause of Knopp's injuries because, among other things, he assumed the risk when he reached into the machine. In response, Knopp argues that there are genuine issues of material fact regarding this issue, so the trial court should not have granted summary judgment.
 {¶ 19} Under Ohio law, there are two different types of assumption of the risk, express and implied assumption of the risk. The doctrines of express and implied assumption of the risk "are so distinct that it is misleading that each continues to bear the title `assumption of risk,' as if the two were interrelated concepts" and "it is of utmost importance which type of assumption of the risk is put forth as a defense." Gallagherv. Cleveland Browns Football Co., 74 Ohio St.3d 427, 431,1996-Ohio-0320. For example, express assumption of the risk deals with the existence of a duty while implied assumption of the risk deals with the proximate cause of the injury. Neither party addresses which form of assumption of the risk applies in this case. But for the reasons given below, we conclude that the doctrine of express assumption of the risk is clearly inapplicable here. Rather, resolution of the issue of proximate cause in this case involves the doctrine of implied assumption of risk. Thus, we must discuss both distinct doctrines, turning first to why express assumption of risk does not control this case.
 Express Assumption of the Risk {¶ 20} "Express, or primary, assumption of the risk is a judicially created doctrine whereby the defendant owes no duty to protect the plaintiff from certain risks that are considered so inherent in some activities that they cannot be eliminated."Sproles v. Simpson Fence Co. (1994), 99 Ohio App.3d 72, 78. For example, it occurs when a person expressly contracts with another not to sue for any future injuries caused by the negligence of that second person and when a person is participating in or watching a recreational sports activity. Gentry v. Craycraft,101 Ohio St.3d 141, 2004-Ohio-0379; Anderson v. Ceccardi
(1983), 6 Ohio St.3d 110, 114. "Primary assumption of risk is a defense of extraordinary strength" because it essentially means "that no duty was owed by the defendant to protect the plaintiff from that specific risk," so a "court must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recovery." Gallagher at 431-432.
 {¶ 21} If a court uses express assumption of the risk to preclude a particular product liability claim, then the court implies that the product is inherently and unavoidably dangerous.Westray v. Imperial Pools Supplies, Inc. (1999),133 Ohio App.3d 426, 433. The applicability of this defense to a particular case turns on whether the risk involved is directly associated with and a regular feature of the activity involved, not on the intensity of the risk. Hardy v. Hall, 2nd Dist. No. 19751, 2003-Ohio-4978, ¶ 15. The relevant question is whether the risk "is such an inherent part of the circumstances of the relationship between the parties that no obligation is imposed on the defendant to protect the plaintiff from the risk; hence, `no duty' of care is owed, and no breach of duty can occur." Id.
 {¶ 22} The doctrine of express assumption of the risk clearly does not apply here. That doctrine implies that the risk was so inherent that it is incapable of elimination. Sproles at 78;Brady-Fray v. Toledo Edison Co., 6th Dist. No. L-02-1260, 2003-Ohio-3422, ¶ 20. There were numerous ways in which the risk of injury by the cutters could have been eliminated in this case. For instance, the machine contained an on/off switch which could be pressed before someone reached near the cutters. In addition, someone could press another button which would have left the machine on, but would have stopped the cutters from spinning. Furthermore, it is not inconceivable that the machine could have been guarded in a manner which prevented anyone from reaching into the machine near the cutters without first removing the guarding. This all demonstrates that the proper doctrine to apply in this case is implied assumption of the risk. A product is not inherently dangerous merely because a person could use it in an inherently dangerous manner. Westray at 433.
 Implied Assumption of the Risk {¶ 23} "[I]mplied, or secondary, assumption of the risk encompasses those situations where the defendant owes some duty to the plaintiff, but it is the plaintiff's voluntary consent to or acquiescence in an appreciated, known, or obvious risk to his safety that will act as a defense to the plaintiff's products liability action." Sproles at 78. This includes "risks that are so obvious in a situation that a person must have known and appreciated the risk." Westray at 432. Questions concerning implied assumption of risk are generally for the jury to determine since implied assumption of the risk has merged with the defense of contributory negligence. Brady-Fray v. ToledoEdison Co., 6th Dist. No. L-02-1260, 2003-Ohio-3422, ¶ 19; R.C. 2315.19. Summary judgment is only appropriate in cases involving implied assumption of the risk when "there is no dispute as to any material fact and `the plaintiff's negligence was so extreme as a matter of law that no reasonable person could conclude that plaintiff was entitled to recover.'" Id., quoting Collier v.Northland Swim Club (1987), 35 Ohio App.3d 35, 39.
 {¶ 24} Implied assumption of the risk and contributory negligence require that the relative degrees of fault be apportioned between plaintiff and defendant. Id. Thus, in order to determine whether Knopp's own actions were the primary proximate cause of his injuries, we must determine whether he assumed the risk of injury when reaching into the machine. In essence, the doctrine of implied assumption of the risk does not mean that the defendant did not proximately cause the injury; rather it means the plaintiff's own negligence was so great it supercedes any negligence on the part of the defendant or defendants.
 {¶ 25} Knopp argues that the doctrine of assumption of the risk should not apply to his claim since he believed that Vari-Wall Tube required him to clean the area of the machine where he was injured. In response, Appellees both contend that Vari-Wall Tube did not compel Knopp to clean that area, that Knopp's subjective belief to the contrary is irrelevant, and that the facts do not support Knopp's argument in support of his subjective belief. In addition, CMI insinuates that Knopp is improperly raising this argument for the first time on appeal.
 {¶ 26} CMI's contention that Knopp is raising this argument for the first time on appeal is simply incorrect. Although Knopp places more emphasis on this argument on appeal, he made the same argument in his response to the various motions for summary judgment. CMI's suggestion to the contrary is incorrect.
 {¶ 27} Nevertheless, Appellees' argument is substantively correct. In Carrel v. Allied Products Corp., 78 Ohio St.3d 284,1997-Ohio-0012, the Ohio Supreme Court was asked to decide whether the assumption of the risk defense is available in a products liability action when the plaintiff is injured in the workplace. Id. at 289.
 {¶ 28} "In a products liability case, assumption of the risk may be a viable defense against an employee injured by a defective product in the workplace. An employee will be deemed to have voluntarily exposed himself or herself to a risk when he or she has elected to use a defective product. However, the defense of assumption of the risk is not available when the employee is required to encounter the risk while performing normal job duties." Id. at paragraph two of the syllabus.
 {¶ 29} The Ninth District applied Carrel in Westover v.White Storage Retreival Systems, Inc. (Nov. 1, 2000), 9th Dist. No. 19845, a case similar to this one. In Westover, the plaintiff was a maintenance employee who was injured when his right arm was pulled into the rollers of a conveyor system. Before the accident, a supervisor had asked the plaintiff to "do something" about the noise coming from the conveyor. The plaintiff then removed a guard covering a pinch point in the system while the system was running and was injured. The plaintiff testified that he knew he should turn off the machine every time he worked on the conveyor and that the guard was there to prevent him from being injured. He argued that he did not because he felt the supervisor's order to "do something" about the noise compelled him to encounter the risk of being caught in the conveyor while it was running. After a trial, the trial court directed a verdict in the defendant's favor. The appellate court affirmed the trial court's decision.
 {¶ 30} "[E]ven if [the supervisor] did, as he said, as [the plaintiff] to `do something' about the noise, this statement is a far cry from instructing him to engage in such risky behavior as removing a guard while the conveyor was running. Even viewing this statement in a light most favorable to [the plaintiff], it cannot be construed as compulsion to assume the risk of being caught in the rollers of a conveyor system. * * *
 {¶ 31} "[The plaintiff]'s job did not require him to remove the guard while the machine was running. [The plaintiff]'s own expert witness * * * testified that [the plaintiff] could have turned of [sic] the machine before removing the guard. He could then have turned the conveyor back on in order to observe it from a safe distance. * * * [T]his simple precaution would have avoided [the plaintiff]'s entrapment by the rollers while he was engaged in removing the guard. * * *
 {¶ 32} "[The plaintiff] was under no compulsion to expose himself to the risk. No one ordered him to remove the guard while the belt was running. Nor was removal of the guard while the conveyor was running a normal part of his job. In fact, that conduct was contrary to everything he had been taught about working on conveyor systems. It was contrary to all the warnings he had received from [his supervisor], as well as the strongly worded written warning on the guard itself. [The plaintiff] elected to expose himself to the risk of injury here." Id. at 3-4; see also VanCoppenolle v. Kamco Industries, Inc. (Oct. 31, 1997), 6th Dist. No. WM-97-004 (Defendant may raise defense of assumption of the risk in a product liability claim based on an accident in a workplace if the plaintiff admits, among other things, that she knew better than to do the act which caused her injury).
 {¶ 33} The same holds true in this case. Knopp admits that he was not told to clean that area of the machine. Indeed, it was unnecessary for him to clean that part of the machine since it was self-cleaning. Instead, Knopp argues that he believed he was required to do so when Griffin told him to "sweep up" at the end of his first shift at Vari-Wall Tube. Knopp noticed that the area in question was clean at the beginning of his shift and assumed that it should be clean at the end of his shift.
 {¶ 34} But Griffin's request that Knopp "sweep up" after his shift was not an order that Knopp clean that particular part of the machine while the machine was running. Even Knopp admits that he understood the term "sweep up" to mean clean the area with a broom and that he did not use a broom when he was reaching over the guard. According to Knopp, he decided to look into and clean that part of the machine on his own initiative. Knopp would have to disregard everything he learned in training and the common sense understanding he had of the danger to believe that Griffin was compelling him to assume the danger by cleaning that area of the machine.
 {¶ 35} During his training, Knopp was instructed not to touch any moving parts and not to stick his hands in the machines. He was also advised that he should not wear long-sleeved shirt, although this was not a requirement. Knopp disregarded this advice even though he was wearing a short-sleeved t-shirt underneath his longsleeved shirt. Griffin showed Knopp where the guards were and where not to put his hands. Knopp understood that placing his hands in those places could injure him since the cutters were dangerous. A warning to "Keep Your Hands Clear" was on the guard that Knopp reached over when trying to clean that area of the machine.
 {¶ 36} Knopp was under no compulsion to expose himself to the risk of cleaning that area of the machine while it was running. No one ordered him to clean that area of the machine while it was running. Nor was cleaning that area of the machine a normal part of his job. That conduct was contrary to his training and his common sense knowledge about the risk involved. It was contrary to the warnings he received from Griffin and the strongly worded written warning on the guard itself. Knopp, like the plaintiff inWestover, elected to expose himself to the risk of injury. Accordingly, the defense of assumption of the risk is a viable defense in this case under Carrel.
 Assumption of the Risk as an Affirmative Defense {¶ 37} Assumption of the risk is a complete defense to a product liability claim against a manufacturer if the assumed risk "was a direct and proximate cause" of the harm for which the plaintiff seeks recovery. R.C. 2315.20(B)(2). Since Knopp assumed the risk in this case, his statutory product liability claim against UNOVA, the manufacturer, must fail and the trial court properly granted summary judgment to UNOVA on this claim.
 {¶ 38} But implied assumption of the risk is not a complete bar to recovery on the remaining claims in this case against both UNOVA and CMI. "[I]mplied assumption of the risk of a person does not bar the person * * * from recovering damages that may have directly and proximately resulted from the negligence of one or more other persons, if the * * * implied assumption of the risk of the complainant * * * was no greater than the combined negligence of all other persons from whom the complainant seeks recovery." R.C. 2315.19(A)(2). Likewise, "If implied assumption of the risk is asserted as an affirmative defense to a product liability claim against a supplier * * *, section 2315.19 of the Revised Code is applicable to that affirmative defense and shall be used to determine whether the claimant is entitled to recover compensatory damages based on that claim and the amount of any recoverable compensatory damages. R.C. 2315.20(B)(3).
 {¶ 39} Generally, questions concerning implied assumption of risk are for the jury to determine since R.C. 2315.19 requires apportionment of the relative degrees of fault between plaintiff and defendant. Brady-Fray at ¶ 19. Accordingly, this court can only grant summary judgment on the issue if Knopp's negligence was so extreme that no reasonable person could conclude that he was entitled to recover. Id.; see also Simmers v. BentleyConstr. Co., 64 Ohio St.3d 642, 646, 1992-Ohio-0042 (Issues of comparative negligence are for the jury to resolve unless the evidence is "so compelling" that reasonable minds can only conclude that the plaintiff's negligence is greater than the combined negligence of all the defendants.). "[I]t is a rare circumstance under which a trial court can take away a jury's duty to apportion fault." Tharp at 1. This case is one of those rare circumstances.
 {¶ 40} Knopp claims that UNOVA's design was defective since it did not provide adequate guarding or warnings and that CMI was negligent for not providing adequate guardings and warnings when it sold the machine to Vari-Wall Tube. But any alleged negligence on the part of either of these defendants is tempered by the fact that warnings and guarding were on the machine when Knopp was using it. Furthermore, Knopp was instructed never to reach into the machines and the guards on the machine warned him to "Keep Your Hands Clear." Those guards were fifty inches above the floor and covered the right-hand side of the machine, where the cutters were located. Knopp was advised not to wear a long-sleeved shirt, but elected to do so anyway even though he had a short-sleeved t-shirt on underneath since he felt like he didn't "have to do everything [Love] tells me." Knopp knew that the cutters were dangerous. Nevertheless, he decided to clean that area of the machine on his own initiative to fill the time at the end of his shift. When he cleaned that area, he did not turn off the machine or the cutters or ask anyone else to turn off the machine or the cutters despite the open and obvious danger that the cutters posed to him. Knopp's sheer recklessness outweighs any alleged negligence on the part of CMI and/or UNOVA.
 Conclusion {¶ 41} The trial court properly granted summary judgment to both CMI and UNOVA in this case since Knopp assumed the risk and no reasonable fact-finder could conclude that Knopp's negligence was not greater than the combined negligence of both CMI and UNOVA. Knopp's negligence was so great when he assumed the risk in this case that it does not matter whether Appellees' action or inaction proximately caused his injuries.
 {¶ 42} Accordingly, Knopp's assignments of error are meritless and the judgment of the trial court is affirmed.
Donofrio, J., concurs, see concurring opinion.
Vukovich, J., concurs in judgment only.
[1] The division of UNOVA involved in this suit does business as Cincinnati Machine, a division of UNOVA. Cincinnati Machines, Inc., and Cincinnati Machine, a division of UNOVA, are unrelated companies without an ongoing business relationship. The similarity between the names of these two companies caused some confusion during previous stages in this litigation. To eliminate that confusion on appeal, the UNOVA-related company will henceforth be referred to as UNOVA and Cincinnati Machines, Inc., will be referred to as CMI.