BUNDSCHU et al., Appellants,

v.

NAFFAH, d.b.a. Ironwood Funland Golf and Driving Range, et al., Appellees.

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 00–C.A.–102.

Decided Feb. 13, 2002.

Richard M. Boyce, for appellants.

Davis & Young, L.P.A., and Timothy G. Welsh, for appellees.

WAITE, Judge.

{¶ 1} This timely appeal arises from a judgment entry of the Mahoning County Court of Common Pleas granting summary judgment to appellees, Mike, Eli, and Odette Haffah, in a personal injury action. David Bundschu ("appellant") and his wife Shirley (collectively referred to as "appellants") alleged negligence in the placement of a fence pole at a golf driving range. Appellant was injured when a ball he hit ricocheted off the pole and hit his eye. Because the doctrine of primary assumption of the risk, *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 6 OBR 170, 451 N.E.2d 780, bars appellants' claim, the trial court decision is affirmed.

{¶ 2} Because this appeal arises out of appellees' motion for summary judgment, the facts must be construed in appellants' favor, as they opposed the motion. Civ.R. 56(C).

{¶ 3} On August 11, 1998, appellant was hitting golf balls at the Ironwood Funland Golf and Driving Range ("Ironwood"), a recreational facility owned by appellees. Appellant was using the last tee box at the west end of the driving range. Immediately adjacent to the tee box was a fifteen-foot section of orange construction fence held up by two tall steel poles. After a few minutes of hitting golf balls, appellant drove a ball such that it sliced into one of the poles and ricocheted back towards him. The ball struck him in the right eye, causing permanent damage and severe, continuous pain.

{¶ 4} Ironwood is a thirty-acre property owned by brothers Mike and Eli Naffah, and their mother Odette ("appellees"). The fence and poles were installed in the 1970s to protect the golfers to the west of the driving range from getting hit with slices from golfers in the tee boxes. The poles and the fence had not been upgraded since the 1970s. The poles were not covered with any padding or shock-absorbing material.

{¶ 5} On September 25, 1998, appellants filed their complaint alleging negligent design, failure to warn, and loss of consortium. Appellees filed their answer on October 13, 1998, and raised, inter alia, the defenses of assumption of the risk and comparative negligence.

{¶ 6} On February 25, 2000, appellees filed a motion for summary judgment. The motion asserted that appellants' complaint was barred by the defense of primary assumption of the risk. Appellees also argued that, if primary assumption of the risk does not apply, appellant's negligence was greater than that of appellees and that appellants are barred from recovery under Ohio's comparative negligence statute, R.C. 2315.19.

{¶ 7} On March 30, 2000, appellants filed a response to appellees' motion for summary judgment. Appellants argued that primary assumption of the risk does not apply to business invitees of recreational and sporting facilities.

{¶ 8} On April 26, 2000, the trial court granted appellees' motion for summary judgment, finding that appellant assumed the risk normally associated with hitting golf balls at a driving range.

{¶ 9} On May 23, 2000, appellants filed their timely appeal.

{¶ 10} A number of events happened after the filing of the appeal which are related to issues raised in appellants' brief. On May 24, 2000, appellants filed an affidavit of disqualification with the Ohio Supreme Court, alleging that the trial court judge had a personal bias in favor of appellees' attorney due to a particularly close friendship with the attorney's father. On June 9, 2000, the Ohio Supreme Court filed a journal entry dismissing the affidavit as moot because the instant case was no longer pending on Judge Krichbaum's docket, which is a requirement of the disqualification statute, R.C. 2701.03.

{¶ 11} Appellant's first assignment of error asserts:

{¶ 12} "The trial court erred as a matter of law in concluding that plaintiff-appellant had assumed a risk inherent in the act of driving golf balls, an individual, and not group activity, when there was no evidence submitted showing that getting struck by his own golf ball coming back from the range was a normal risk associated with driving golf balls on a properly designed and maintained range, and there were extensive evidentiary materials submitted supporting the conclusion that it was appellees' defectively placed and uncovered fence pole, and defective tee box, that were the sole causes of Bundschu's injuries, thereby creating issues of fact precluding the granting of the business premises owners' (appellees) motion for summary judgment."

{¶ 13} Appellants present two subissues for review, which raise essentially the same question:

{¶ 14} 1. "Does a business invitee of a golf driving range (or for that matter any recreational facility) always assume the risk of injuries caused by a defectively designed or maintained golf range (recreation, sports, athletic) facility?"

{¶ 15} 2. "Stated in the alternative, is a business invitee of a sports or recreational facility always barred from asserting a cause of action for injuries caused or attributed to a defect on the premises, as opposed to a risk inherent in the recreational activity itself, merely because the invitee is engaged in a recreational pursuit at the time of the injury?"

{¶ 16} Appellants begin by stating that primary assumption of the risk is the doctrine that a participant in a sporting activity cannot recover for injuries sustained in the activity arising out of customary and foreseeable risks inherent in the activity, citing *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, and *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705.

{¶ 17} Appellants contend that defective sports facilities themselves are not covered by primary assumption of the risk because any risk arising from the defect cannot be a risk normally associated with the sport, citing in support *Goffe v. Mower* (Feb. 5, 1999), Clark App. No. 98–CA–49, 1999 WL 55693. In *Goffe*, the plaintiff was injured at a go-cart track when she was bumped by another go-cart at the end of the ride. *Goffe* held:

{¶ 18} "One who rides an amusement device assumes the ordinary risks inherent in the ride, insofar as those risks are obvious and necessary, but only so long as the device is properly designed and the operator has used proper care in its construction and operation. He does not assume the risk of the proprietor's negligence." Id. at * 3.

{¶ 19} Appellants also cite *Karlovich v. Nicholson* (Sept. 30, 1999), Lake App. No. 98–L–097, 1999 WL 960583, which involved a horseback riding accident. In *Karlovich*, the plaintiff, who was an inexperienced rider, was injured when the mare she was riding became uncontrollable after being separated from its unweaned foal. The plaintiff argued that the property owners should have warned an inexperienced rider that a mare is dangerous under these circumstances. Id. at * 3. *Karlovich* held:

{¶ 20} "[T]he doctrine of primary assumption of risk [may be] invoked when a participant in a recreational activity attempts to sue a non-participant sponsor or landowner for injuries resulting from the recreational activity. The analysis turns on whether the participant was subjected to risks or hazards that a reasonable participant would not expect to encounter in the particular activity. In evaluating whether a particular risk is deemed outside the ordinary risks that a reasonable participant should expect to encounter, the analysis hinges on what standard of care that recreational participant has a right to expect from the particular sponsor or landowner." Id. at * 7.

{¶ 21} Although *Karlovich* ultimately held that primary assumption of the risk did relieve the property owners of liability, appellants argue that the doctrine

does not automatically bar negligence suits against landowners or business owners merely because recreational activities are involved.

{¶ 22} Appellants contend that getting injured by a golf ball ricocheting off a fence pole is not an inherent and ordinary risk of using a driving range.

{¶ 23} Appellees argue that the *Marchetti* definition of primary assumption of the risk is a defense that can be asserted by both co-participants in recreational activities and the sponsors and property owners of the activity, citing *Whitaker v. Davis* (Jan. 27, 1997), Warren App. No. CA–96–07–060, 1997 WL 30552, and *Sugg v. Ottawa Cty. Agricultural Soc.* (Apr. 19, 1991), Ottawa App. No. 90–OT–005, 1991 WL 59877. Appellees direct this court's attention to *Karlovich*, the very case that appellants rely upon, for this same proposition.

{¶ 24} Appellees also cite this court's opinion in *Rodriguez v. O.C.C.H.A.* (Sept. 26, 2000), Mahoning App. No. 99 CA 30, 2000 WL 1486449. In *Rodriguez*, the plaintiff was injured in a touch-football game after a fight had broken out between two teams. The plaintiff sued the sponsor of his team for negligence and negligent supervision. This court held:

{¶ 25} "In recreational sporting events, participants may be held liable if they cause injury through reckless or intentional misconduct. * * * Non-participants involved in the game may be held to the same standard as participants unless there is evidence of negligent supervision." (Citations omitted.) Id. at * 2.

{¶ 26} Appellees argue that, in the instant case, there is no suggestion that they acted recklessly or intentionally or that negligent supervision is at issue. Appellees conclude that, as a matter of law, they owed no duty to appellant and that the trial court correctly granted summary judgment.

{¶ 27} In the alternative, appellees argue that appellant's negligence was greater than any negligence on their part, thus barring any recovery under the comparative negligence statute, R.C. 2315.19. Ohio's comparative negligence scheme provides that a plaintiff's contributory negligence does not bar recovery if the plaintiff's negligence is no greater than the combined negligence of all other parties from whom the plaintiff seeks recovery. R.C. 2315.19(A)(2).

{¶ 28} Appellees further argue that they had no duty to warn or protect against open and obvious dangers, citing *Anderson v. Ruoff* (1995), 100 Ohio App.3d 601, 654 N.E.2d 449. Open and obvious dangers are those dangers that are either known by the plaintiff or are so apparent that the plaintiff would reasonably be expected to discover and protect against. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 48, 42 O.O.2d 96, 233 N.E.2d 589. Appellees cite the deposition testimony of appellant for the following facts: Appellant played golf 32 times per year starting in 1995; he had an 18 handicap for 18 holes; he often hits lousy shots; he had been to Ironwood on previous occasions; he himself chose the

tee box closest to the fence; he saw the fence and the poles; and he hit approximately 20 balls prior to the one which caused his eye injury.

{¶ 29} Appellees maintain that appellant admitted that he saw the fence and the fence poles and was aware that they were there. Appellees conclude that, even under comparative negligence principles, a reasonable juror could only conclude that appellant's negligence exceeded any possible negligence on the part of appellees and that they had no duty to warn of the open and obvious danger of the pole.

{¶ 30} Finally, appellees argue that appellees Odette and Eli Naffah were owners out of possession and control of the property and were relieved of liability for that reason as well. Appellees cite *Hendrix v. Eighth & Walnut Corp.* (1982), 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149, in support, which states:

{¶ 31} "In Ohio, the commercial lessor's liability is governed by traditional common law principles. Under the common law, one having neither possession nor control of the premises is ordinarily not liable for damages resulting from the condition of the premises." Id. at 207, 1 OBR 230, 438 N.E.2d 1149.

{¶ 32} Based on the record before us and the case law, appellants' first assignment of error is without merit.

{¶ 33} This matter involves our review of the decision to grant summary judgment to appellees. In reviewing a summary judgment action, an appellate court reviews the evidence de novo, but in the same manner as the trial court. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. In order to prevail on a motion for summary judgment, the movant must show that (1) there remains no genuine issue as to any material fact and (2) when construing the evidence most strongly in favor of the opposing party, reasonable minds can only conclude that the moving party is entitled to judgment. Civ.R. 56(C); *Welco Indus., Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129. The movant bears the initial burden of informing the trial court of the basis for its motion and must identify the parts of the record that tend to show that no genuine issue of material fact exists as to the essential elements of the opposing party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once this initial burden is met, the opposing party has a reciprocal burden to raise specific facts that demonstrate that a genuine issue exists for trial. Id. Where the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden of proof, summary judgment is appropriate. Id.; see, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265.

{¶ 34} The parties agree on the essential facts of this case, at least as far as the conditions which led to appellant's injury. The only remaining disputes relate

to the legal questions as to whether primary assumption of the risk applies, or if the "open and obvious" doctrine bars recovery.

{¶ 35} As a general rule, a business owner owes a duty to an invitee to exercise ordinary care for the invitee's safety and protection. *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 502 N.E.2d 611. This includes a duty to warn an invitee of latent or concealed defects which the owner knows of or should have knowledge. *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52–53, 7 O.O.3d 130, 372 N.E.2d 335. A business owner is not an insurer of the invitee's safety but does have a duty to exercise reasonable care to protect against unreasonable risks of foreseeable harm. Id. at 52, 7 O.O.3d 130, 372 N.E.2d 335.

{¶ 36} In a sports context, however, conditions or conduct that otherwise might be interpreted as unreasonably dangerous often are an integral part of the sporting activity. The nature of the sporting activity is highly relevant in defining the duty of care owed by a particular defendant: "What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the participant's ideas of foreseeable conduct in the course of a game." *Thompson,* 53 Ohio St.3d at 105, 559 N.E.2d 705.

{¶ 37} Under the primary assumption of the risk doctrine, a recreation provider ordinarily owes no duty to a participant or spectator of an active sport to eliminate the risks inherent in the sport. *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 432, 659 N.E.2d 1232; *Cincinnati Baseball Club Co. v. Eno* (1925), 112 Ohio St. 175, 180–181, 147 N.E. 86. Primary assumption of the risk may apply to relieve the liability of both co-participants and non-participants (the recreation provider and the landowner typically being non-participants). *Rodriguez,* supra, Mahoning App. No. 99–CA–30 (defendant was a sponsor of a football team); *Karlovich,* supra, Lake App. No. 98–L–097 (defendants were the owners of a horse and the property where accident occurred); *Whitaker,* supra, Warren App. No. 96–07–060 (defendants were the owners of a motorcycle and the property where accident occurred); *Kline v. OID Assoc., Inc.* (1992), 80 Ohio App.3d 393, 396–397, 609 N.E.2d 564 (defendants included the organizer of a soccer league and the owner of the soccer field).

{¶ 38} Primary assumption of the risk is the judicially created affirmative defense whereby a defendant owes no duty to protect a plaintiff against certain risks that are so inherent in an activity that they cannot be eliminated. *Sproles v. Simpson Fence Co.* (1994), 99 Ohio App.3d 72, 78, 649 N.E.2d 1297. In contrast, implied or secondary assumption of the risk refers to those instances where a defendant owes some duty of care, but the plaintiff voluntarily consents

or acquiesces in an appreciated, known, or obvious risk created by the breach of the defendant's duty of care. Id. Primary assumption of the risk is a complete bar to a plaintiff's recovery because the essential element of duty is negated. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 6 OBR 170, 451 N.E.2d 780. In contrast, secondary assumption of the risk is subsumed under Ohio's comparative negligence scheme, and does not act as a bar to recovery unless the plaintiff's negligence in consenting to the risk is greater than the defendant's negligence. Id. at 113, 6 OBR 170, 451 N.E.2d 780; R.C. 2315.19.

{¶ 39} A number of cases have stated a blanket rule that sponsors of sporting or recreational events are liable for injuries arising only from wanton, reckless, or intentional conduct, unless negligent entrustment or negligent supervision is involved. *Staadecker v. Emerald Health Network* (Dec. 16, 1993), Cuyahoga App. No. 64191, 1993 WL 526679; *Kline*, supra, at 395, 609 N.E.2d 564; *Karlovich*, supra, at * 6. The rule would be better stated as a recreation provider has a duty "not to increase the risk of harm over and above the inherent risk of the sport." *Am. Golf Corp. v. Superior Court of Los Angeles Cty.* (2000), 79 Cal.App.4th 30, 37, 93 Cal.Rptr.2d 683.

{¶ 40} *American Golf* involved facts very similar to those of the case at bar. The plaintiff and a friend were playing the 13th hole of a golf course. The plaintiff was seated in a golf cart, and the friend was taking his second shot from the rough. A removable wooden yardage marker was located 5 to 10 yards from the ball, away from the line of play. The friend hooked the ball, which ricocheted off the yardage marker, striking the plaintiff in the eye.

{¶ 41} The plaintiff in *American Golf* sued the golf course for negligent design. The court held:

{¶ 42} "Generally, the participation in an active sport is governed by primary assumption of risk, and a defendant owes no duty of care to protect a plaintiff against risks inherent to the sport. However, a recreation provider owes a participant in an active sport a duty, under the secondary assumption of the risk doctrine, not to increase the risk of harm over and above the inherent risk of the sport. If a risk is inherent in a sport, the fact that a defendant had a feasible means to remedy the danger does not impose a duty to do so. A duty is not created because safer materials are available to remedy the danger. The standards in the industry define the nature of the sport." (Citations omitted.) Id. at 36–37, 93 Cal.Rptr.2d 683.

{¶ 43} The *American Golf* court went on to hold:

{¶ 44} "Golf is an active sport to which the assumption of the risk doctrine applies. 'Hitting a golf ball at a high rate of speed involves the very real possibility that the ball will take flight in an unintended direction. * * *'

[Citation omitted]. Errant golf shots may strike a fixed object, such as a rock, tree or fence, ricochet, and strike another player." (Citations omitted.) Id. at 37–38, 93 Cal.Rptr.2d 683.

{¶ 45} In the case at bar, the nature of the recreational activity was similar to golf, i.e., hitting a golf ball as far as possible in a controlled environment, simulating a tee shot in a golf game. A significant danger of the activity is that a ball may be hit incorrectly and veer off in any direction. The real danger in the sport, though, is the hitting of the ball itself. A person who uses a driving range should expect that some precautions are used to prevent errant balls from hitting non-participants. That an errant ball is deflected back into the participant's playing field, rather than into an area with non-participants, should also be considered part of the inherent risk of the sport. For this reason, we hold that the doctrine of primary assumption of the risk applies to relieve appellees of liability.

{¶ 46} Appellees' additional argument that Eli and Odette Naffah are owners out of possession is baseless. The uncontradicted evidence in the record reveals that all of the defendants were co-owners of the property. One or more of the defendants may have been out of possession if the property had been leased to someone else, but there is no evidence whatsoever of appellees' granting a lease to anyone. A co-owner of real property has a right to enter upon the common estate and take possession, subject to the right of his co-tenants to take possession. *Collins v. Jackson* (1986), 34 Ohio App.3d 101, 103, 517 N.E.2d 269. All three appellees had a right to access the property at any time, and there is no evidence that any of the co-owners were out of possession either physically or legally.

{¶ 47} As previously stated, the salient facts of this case are not in dispute. We hold, based on these, that a driving range owner or operator is protected by the defense of primary assumption of the risk for putting up a protective fence and fence poles at the far end of the driving range out of the field of play of the golfers.

{¶ 48} Appellant's second assignment of error argues:

{¶ 49} "The trial court erred as a matter of law in granting summary judgment to defendants-appellees before first disclosing the personal bias it had in favor of defense counsel based upon the court's intimate and long-term friendship with defense counsel's father and then close out of court interactions with defense counsel in organizing and hosting his father's retirement dinner. Pursuant to Canon 3(E)(1)(a) of the Code of Judicial Conduct the trial court had a mandatory duty to disclose its potential personal bias, and its failure to do so creates and [sic] appearance of impropriety that can only be cured by vacation of the summary judgment and re–assignment of the case to a visiting judge not familiar with the trial judge or, in the alternative, a change of venue."

{¶ 50}   Appellants argue that the trial judge should have recused himself or should have been removed from the case because of personal bias towards appellees.   Appellants do not explain what that bias might be, and they do not point to anything in the record indicating bias.   Appellants do not cite any legal authority that would enable this court to reverse and remand this case solely because of an unidentified bias of the trial judge.

{¶ 51}   Appellate courts do not have jurisdiction to disqualify a common pleas judge on grounds of bias.   R.C. 2701.03 grants to the Chief Justice of the Ohio Supreme Court the exclusive authority to disqualify and replace a common pleas court judge because of personal bias.   R.C. 2701.03 requires a party or an attorney to file an affidavit of disqualification with the Clerk of the Supreme Court in order to initiate disqualification proceedings.   "Since only the Chief Justice or his designee may hear disqualification matters, the Court of Appeals [is] without authority to pass upon disqualification or to void the judgment of the trial court upon that basis."   *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441, 8 O.O.3d 438, 377 N.E.2d 775.   Furthermore, Section 5(C), Article IV of the Ohio Constitution specifically states: "The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof."

{¶ 52}   Furthermore, because the appeal of a motion for summary judgment is reviewed de novo by this court, any bias of the trial judge in deciding the motion for summary judgment would be irrelevant on appeal, unless appellants could show how the trial judge's bias prevented this court from fully addressing the motion.

{¶ 53}   Finally, this court has no authority to reverse a decision of the Ohio Supreme Court.

{¶ 54}   The record reveals that the Supreme Court dismissed appellants' affidavit of disqualification as being moot because there was no proceeding pending before the trial judge when they filed their affidavit.   The trial court had already entered final judgment before disqualification proceedings had begun.   This court is charged with accepting and enforcing the law as promulgated by the Ohio Supreme Court and is bound by and must follow the Supreme Court's decisions.   *World Diamond, Inc. v. Hyatt Corp.* (1997), 121 Ohio App.3d 297, 306, 699 N.E.2d 980.

{¶ 55}   In conclusion, we overrule both of appellants' assignments of error and affirm the judgment of the trial court in full.

Judgment affirmed.

VUKOVICH, P.J., and DeGENARO, J., concur.