OPINION
{¶ 1} Plaintiff-appellant, Lori Byer (Byer), appeals a decision of the Noble County Court of Common Pleas denying her claim of negligence against defendant-appellee, Ken Lucas (Lucas). Byer contends the trial court erred in finding that Lucas was exempt from liability under the recreational user immunity statute, R.C. 1533.181. Byer also contends that the trial court incorrectly applied the doctrine of primary assumption of the risk.
 {¶ 2} On August 19, 2006, Byer participated in a hayride as part of the festivities at a house party. (Byer Depo. 13, 16.) Both Lucas's hay wagon and a second wagon left the party and proceeded along the public roads of Noble County. (Lucas Depo. 17-19.) Lucas owned one of the hay wagons and the tractor that pulled it. (Lucas Depo. 9-10.) Byer rode on the wagon that Lucas operated. (Byer Depo. 27.)
 {¶ 3} Lucas admitted to drinking five or six beers between noon and the time of the hayride accident, which occurred sometime after 7:00 P.M. (Lucas Depo. 11-12.) Both Byer and other witnesses recall seeing Lucas drink beer during the hayride. (Archer Depo. 9; Clark Depo. 13; Byer Depo. 37; Demmerling Depo. 11.) However, three of these witnesses could not recall how many beers Lucas may have consumed and these witnesses implied that Lucas didn't consume much alcohol at all. (Archer Depo. 10; Clark Depo. 8, 28; Demmerling Depo. 19-20.) Byer testified that Lucas "was drinking a beer" while driving the hayride tractor. (Byer Depo. 37.) She also testified that she did not witness Lucas drinking alcohol prior to this. (Byer Depo. 17, 37.) Lucas testified that he drank a beer during the beginning of the hayride, but that no one gave him a beer during the hayride. (Lucas Depo. 22.) Lucas also testified that he was not drunk. (Lucas Depo. 32.)
 {¶ 4} Eventually, Lucas stopped the wagon at the top of a steep hill and advised the passengers that they could get off the wagon and either walk down the hill or wait to be picked up by a truck to return to the party. (Lucas Depo. 29; Kenneth Oliver Depo. 21-22; Lisa Oliver Depo. 15-16, 25-26; Demmerling Depo. 11, 16, 21; Schafer Depo. 13; Shelly Lucas Depo. 10.) However, Byer and other witnesses did not recall hearing this instruction and remained on the wagon. (Byer Depo. 46; Clark *Page 2 
Depo. 17-18; Jessica House Depo. 19.) Due to the rough gravel road and the weight of the hay wagon, Lucas lost control of the tractor while proceeding down the hill. (Lucas Depo. 29-31; Kenneth Oliver Depo. 25-26.) Byer was ejected from the wagon and landed near a ditch on the side of the road. (Byer Depo. 48.) She was eventually treated for a head injury and two broken segments of her tailbone. (Byer Depo. 57-58.) Incidentally, the second wagon took a different route back to the party. (Byer Depo. 41.)
 {¶ 5} Byer filed suit against Lucas on January 21, 2007, alleging negligence, and intentional and reckless conduct. Prior to trial, in a motion filed with the trial court, Byer argued that the standard of negligence should govern her recovery in this case. Alternatively, Lucas argued that the recreational activities statute applied, thus Byer needed to prove reckless or intentional conduct to recover. The trial court concluded that the recreational activities doctrine applied, thereby precluding Byer's negligence argument. It is from this decision that Byer appeals.
 {¶ 6} Trial commenced on March 4, 2008, and the jury rendered a verdict in favor of Lucas. In addition to the general verdict, the jury answered one special interrogatory finding that Lucas was not reckless.
 {¶ 7} Byer raises one assignment of error, which states:
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE `RECREATIONAL ACTIVITY DOCTRINE' BARRED PLAINTIFF/APPELLANT'S CLAIM OF NEGLIGENCE."
 {¶ 9} Byer presents two separate issues for review, each of which revolve around what duty of care Lucas owed to her. The existence of a duty of care is a question of law for the court to determine.Mussivand v. David (1989), 45 Ohio St.3d 314, 318-319, 544 N.E .2d 265. Thus, an appellate court reviews the decision anew. Cleveland Elec.Illum. Co. v. Pub. Util. Comm. (1996), 76 Ohio St.3d 521, 523,668 N.E.2d 889.
 {¶ 10} Byer's first issue states:
 {¶ 11} "Operating a tractor on a public road is not a recreational activity." *Page 3 
 {¶ 12} Byer argues that the hayride was not a recreational activity because a tractor is a motor vehicle, and because the tractor was operated on a public road. Byer cites to cases that found a tractor to be a motor vehicle. See City of Wauseon v. Badenhop (1984),9 Ohio St.3d 152, 9 OBR 442, 459 N.E.2d 867; Muenchenbach v. Preble County (2001)91 Ohio St.3d 141, 742 N.E.2d 1128; and Putka v. Parma (1993),90 Ohio App.3d 647, 630 N.E.2d 380. Thus, Byer reasons, "even though the hayride was an enjoyable activity, it still involved use of the public roads for transportation. Negligence should apply." Byer also asserts that under the trial court's reasoning, an individual driver or passenger's subjective intent in using a vehicle on a public road would become the determinative factor in deciding whether the recreational activities doctrine applies to a situation. According to Byer, this means that whether a vehicle is used for recreational purposes would determine whether a driver is liable for negligence.
 {¶ 13} In response, Lucas argues that "[t]he hayride was neither a precursor to an event nor a method of transportation to an activity or event, but was the event itself." Lucas further asserts that the hayride was a recreational activity held at a social gathering, and that the riders were voluntary participants. Lucas disagrees with Byer's contention that the hayride was not recreational because a tractor is considered a motor vehicle, stating, "[t]here is nothing about the nature of a motor vehicle that requires an activity using one to be classified outside the Recreational Activity doctrine." Lucas argues courts have found that activities involving motor vehicles are recreational, and that activities can be recreational even when they occur on public roads. See Lykins v. Dayton Motorcycle Club (1972), 33 Ohio App.2d 269, 62 O.O.2d 382, 294 N.E.2d 227; Sebasta v.Holtsberry (Aug. 17, 2000), 5th Dist. No. 00CA00018; and Pope v.Willey, 12th Dist. No. CA2004-10-077, 2005-Ohio-4744. Lucas finally asserts that the only effect the recreational activity doctrine has on Byer is to require her to prove reckless or intentional conduct to prevail in her case against him. *Page 4 
 {¶ 14} The cases cited by Byers have no bearing on the issue of whether she was a participant in a recreational activity that occurred on a public roadway. Although Badenhop involved a hayride, it was a criminal case where the driver of the tractor had been charged with DUI and the issue was whether the tractor was considered a motor vehicle for purposes of that offense. Neither Muenchenbach and Pope involved a hayride, but persons injured by tractors owned and operated by a political subdivision. In each of those cases, the issue was whether a tractor was a motor vehicle for purposes of the political subdivision immunity statute.
 {¶ 15} The cases cited by Lucas are more relevant. The Lykins court determined that motorcycles, considered motor vehicles, could be engaged in a recreational activity. Id. at 272. Likewise, in Sebasta, the Fifth District determined that tubing behind a motor boat is a recreational activity and is subject to the recreational activities doctrine. Id. Further, the Second Appellate District held that the appellant's status as the operator of a motor vehicle, that being a snowmobile, did not affect his status as a recreational snowmobiler, as a matter of law.Price v. Village of New Madison (Oct. 26, 1994), 2d Dist. No. 1348. The Second District also stated that despite the appellant's use of both public and private roads during his snowmobile ride, the ride was one continuous event that could not be segmented. Id.
 {¶ 16} Further, the Twelfth District's decision in Pope, discussed in detail below, found the fact that the appellant was on a public road riding an ATV when the injury occurred was not a primary issue. Id. at ¶ 15. Instead, the court said, "it is the nature of the danger that led to the injury" that needs to be examined. Id.
 {¶ 17} Based on the preceding case law, Byer's argument fails. A negligence standard should not apply simply because the farm tractor was operated on a public road. Clearly, courts have found that activities involving motor vehicles are recreational, and that activities can be recreational even when they occur on public roads.
 {¶ 18} The second issue presented by Byer is as follows: *Page 5 
 {¶ 19} "The trial court erred in deciding that the circumstances of Appellant's injuries are an inherently foreseeable result of participating on a hayride."
 {¶ 20} The Ohio Supreme Court has held that, "[w]here individuals engage in recreational or sports activity, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either `reckless' or `intentional' as defined in Section 500 and 8A of the Restatement of Torts 2d." Marchetti v. Kalish (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, at syllabus. Any recovery for injuries sustained in such activities must by definition arise from something other than an ordinary risk. Id. at 97.
 {¶ 21} In Gentry v. Craycraft, 101 Ohio St.3d 141, 2004-Ohio-379,802 N.E.2d 1116, at ¶ 11, the Supreme Court of Ohio explained the basis of its decisions in both Marchetti and Thompson v. McNeill (1990),53 Ohio St.3d 102, 559 N.E.2d 705, stating, "[o]bviously, without our stating so, in Marchetti and Thompson we applied `primary' assumption-of-risk principles in limiting the defendant's liability. Primary assumption of the risk is essentially a principle of no duty, or no negligence." Id., citing Prosser Keeton, The Law of Torts (5th Ed. 1984) 496, Section 68. Thus, the Ohio Supreme Court reasoned that a plaintiff assumed the risk by voluntarily participating in the activity or sport, and chose to focus on the conduct of the defendant to determine whether he or she had been reckless or had acted intentionally. Id. at ¶ 13. InGentry, the Ohio Supreme Court reiterated "that in a personal injury action brought for injuries sustained while an individual is a participant in or a spectator at a sport or recreational activity, * * * recovery is dependent upon whether the defendant's conduct was either reckless or intentional." Id.
 {¶ 22} "Primary assumption of the risk is the judicially created affirmative defense whereby a defendant owes no duty to protect a plaintiff against certain risks that are so inherent in an activity that they cannot be eliminated." Bundschu v. Naffah, 147 Ohio App.3d 105,2002-Ohio-607, 768 N.E.2d 1215, at ¶ 38 (7th Dist.). "[O]nly those risks directly associated with the activity in question are within the scope of primary assumption of risk, so that no jury question would arise when an *Page 6 
injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff from that specific risk. In many situations * * * there will be attendant circumstances that raise questions of fact whether an injured party assumed the risk in a particular situation. In that case, the doctrine of implied assumption of risk, not primary assumption of risk, would be applicable." Gallagher v. Cleveland Browns Football Co. (1996),74 Ohio St.3d 427, 432, 659 N.E.2d 1232, 1237.
 {¶ 23} Byer argues that the recreational activities doctrine fails to apply in this case "because of the nature and circumstances of [her] injuries." Byer asserts that Lucas made an "alcohol-clouded" decision to proceed down an unsafe hill while hauling a tractor full of people. As a result of Lucas losing control of the tractor, and sudden "jolts and whipping movements of the wagon," Byer was thrown from the wagon and injured. Byer says that these are not the types of risks inherent in a hayride, and that the recreational activities doctrine is not intended to protect people who choose to drink and drive, "even if passengers are in the vehicle for recreational purposes."
 {¶ 24} In response, Lucas argues that the accident and Byer's injuries were inherent or foreseeable, considering the nature of the activity and the conditions under which it occurred. Lucas relies on this court's decision in Shaner v. Smoot (Oct. 12, 2001), 7th Dist. No. 712, for the premise that the conditions under which an activity occurs determines what potential or ordinary injuries are foreseeable. In Shaner, the appellant rode a motorcycle in high grass in an area that he knew contained tree stumps, and was injured when he hit a stump. This court said "any recovery for injuries sustained in [recreational] activities must by definition arise from something other than an ordinary risk." Id. The court then determined that the risk of hitting a tree stump is an ordinary risk of riding a motorcycle in such a location. Id. Thus, the appellant assumed the ordinary risk of riding the motorcycle under such conditions. Id. This court also determined that the appellees were not liable for failure *Page 7 
to warn of an ordinary risk assumed by the appellant regardless of the reasons for their alleged failure to warn. Id.
 {¶ 25} Lucas also relies on the Sixth Appellate District's opinion inSugg v. Ottawa Cty. Agricultural Soc. (Apr. 19, 1991), 6th Dist. No. 90-OT-005. In Sugg, the appellant, a horse harness racing participant, suffered injuries, in part, due to the dusty conditions at a racetrack. Id. The Sixth District found that the appellant voluntarily accepted the ordinary and inherent risks involved in harness racing when he was fully aware of the conditions and continued to race in spite of his knowledge. Id. Therefore, under the doctrine of primary assumption of the risk, the appellee was relieved of any duty it owed the appellant.
 {¶ 26} Lucas asserts that this case is similar to both Shaner andSugg in that Byer chose to participate in the hayride despite the various conditions known to her. Byer knew that Lucas had been drinking and had plenty of time to observe his behavior for the duration of the hayride. She also had an opportunity to get off the hayride at the top of the hill, but chose to continue.
 {¶ 27} While the risks identified in Shaner and Sugg may have been a part of what was ordinary and foreseeable for the activities involved in those cases, such is not the case here. It is important to be mindful that that "[t]he application of the doctrine of primary assumption of the risk involves a basic determination as to whether the defendant owed the plaintiff a duty of care. It is well established that the existence of a duty is a question of law for the court to decide on a case-by-casebasis." (Emphasis added.) Wilson v. Lafferty Volunteer Fire Dept. (Nov. 29, 2001), 7th Dist. No. 00 BA 29, citing Grover v. Eli Lilly Co.
(1992), 63 Ohio St.3d 756, 762, 591 N.E.2d 696. In this case, it cannot be said the risks Byer encountered were an ordinary and foreseeable part of her hayride.
 {¶ 28} Byer cites a Ninth District Court of Appeals case which, while factually dissimilar in terms of the recreational activity involved, is helpful to our analysis of primary assumption of the risk in this case. In Aber v. Zurz, 175 Ohio App.3d 385, 2008-Ohio-778, 887 N.E.2d 381, the Ninth District considered whether the trial court *Page 8 
improperly granted summary judgment in favor of a boat operator, rather than the rider of a water tube pulled by the boat. Id. The boat operator was traveling at a high rate of speed in a crowded water ski zone and was forced to make a sharp turn to avoid hitting other people or boats. Id. at ¶ 2. Due to the speed of the boat, the tube flipped and the tube rider sustained a broken jaw. Id. In his complaint, the rider asserted that the boater negligently and recklessly operated the boat. Id. at ¶ 3. In response, the boater filed a motion for summary judgment, arguing that the doctrine of primary assumption of the risk worked to bar a negligence claim. Id. He further argued that the evidence did not show that he had acted recklessly. Id. The rider responded, arguing that the doctrine of primary assumption of the risk did not apply because the risk was not one that was inherent to the activity of tubing. Id. Instead, the rider argued that the doctrine of implied assumption of the risk applied. Id. at ¶ 8. Implied assumption of the risk involves situations where "there will be attendant circumstances that raise questions of fact whether an injured party assumed the risk in a particular situation." Id. at ¶ 10, citing Gallagher v. Cleveland BrownsFootball Co., 74 Ohio St.3d 427, 431, 1996-Ohio-320, 659 N.E.2d 1232. The tube rider also argued that if the primary assumption of the risk doctrine applied, the issue of whether the boater acted recklessly was a question of fact for the jury to decide. Id. at ¶ 8. The trial court granted summary judgment in favor of the boater, finding that tubing is a recreational activity and the evidence proved the rider's injury resulted from conduct that was a foreseeable and customary part of tubing, thus the doctrine of primary assumption applied to bar the rider's negligence claim. Id. at ¶ 12. The trial court further determined that the boater was not reckless. Id. at ¶ 3.
 {¶ 29} In conducting its analysis, the Ninth District considered the following factors. First, the rider conceded at trial that falling off a tube is a foreseeable and customary risk of tubing at a reasonable speed. Id. at ¶ 13. However, the circumstances contributing to the rider's injury "included a speeding boat, a crowded ski lane, and an unexpected sharp turn." Id. at ¶ 12. Additionally, the boater himself admitted that he went too fast the day of the accident, and "if [he] had to do it over *Page 9 
again," he would have handled the boat differently. Id. at ¶ 13. TheAber court found that although tubing is a recreational activity, the risks involved in the case were not customary and foreseeable as a matter of law. Id. at ¶ 12. The court explained that the "specific facts of this case show that this risk was elevated by the speed of the boat and other conditions solely under [the boater's] control." Id. at ¶ 14. Thus, the court concluded that the rider "could not have foreseen this elevated risk." Id. The Aber court further explained that the risk created by the high speed of the boat "could have been eliminated by traveling at a typical speed." Id. The court finally determined that "the risk of falling off a tube and breaking one's jaw in several places while being pulled at a high rate of speed in a crowded ski lane is not an inherent risk of tubing. Therefore, the doctrine of primary assumption of the risk is inapplicable." Id. at ¶ 15. The court also found that a reasonable jury could determine that the boater negligently operated the boat, and reversed and remanded the matter to the trial court. Id.
 {¶ 30} Byer concedes that inherent risks of a hayride might include getting scratched by tree braches, being bounced around on the wagon, and even losing one's balance and falling off the wagon. Here, however, we have risks that are not ordinary, customary, or foreseeable. Like inAber, the recreational activity here entailed risks that extended well beyond the ordinary; risks not directly associated with a hayride.Gallagher, supra. Three factors taken together support that conclusion — choice of route, driver control, and injuries. First, the driver of the first hay wagon took a different, safer route back to the party, choosing not to go down the hill that Lucas chose. Most all of the passengers agreed that the hill Lucas chose to take the hayride down was a steep hill.
 {¶ 31} Second, the out of control nature of the ride was not ordinary. None of the passengers on the hayride disputed that the tractor and wagon careened down the hill out of control. Byer's daughter, who was also on the wagon when the incident occurred, described the force with which her mother was thrown from the wagon. It can be safely described as not merely falling off a hay wagon: *Page 10 
 {¶ 32} "A. * * * I fell off, but I just rolled off the side of the wagon and I just remember mom going overtop of me.
 {¶ 33} "Q. You saw her flying overtop of you?
 {¶ 34} "A. She went way, way overtop of me * * *.
 {¶ 35} "* * *
 {¶ 36} "A. * * * And I remember seeing my mom go overtop of me and she landed back more by the ditch. I was still in the gravel road. She was in the ditch." (Jessica House Depo. 20-21.)
 {¶ 37} In addition to Byer being thrown from the left side of the wagon and her daughter, Jessica House, falling from the wagon, other passengers also were thrown or fell from the wagon. Jess Schafer fell from the wagon and it ran over his leg shortly before it finally came to a stop. (Schafer Depo. 16, 18.) Luke Archer was also thrown from the right side of the wagon and ended up in a ditch. (Archer Depo. 16, 21.)
 {¶ 38} Third, like in Aber, the injuries Byer sustained were not the type of injuries one would expect to sustain on a hayride. She suffered a cut to her head that required stitches, skin abrasions, and two segments of her tailbone were fractured. She suffered and continues to suffer pain as a result of being thrown from that wagon.
 {¶ 39} In sum, a farm tractor and its wagon cascading down a steep hill out of control and jackknifing to a stop throwing passengers from it is not an inherent risk of a hayride. Therefore, the recreational activities/primary assumption of the risk doctrine is inapplicable and general negligence principles apply to Byer's claim against Lucas. We acknowledge that there is some dispute about whether Lucas may have given passengers, including Byers, the opportunity to disembark the wagon before going down the hill. That involves secondary assumption of the risk which is subsumed under Ohio's comparative negligence scheme, and does not act as a bar to recovery unless the plaintiff's negligence in consenting to the risk is greater than the defendant's negligence.Bundschu v. Naffah, 147 Ohio App.3d 105, 2002-Ohio-607, 768 N.E.2d 1215, at ¶ 38 (7th Dist.); R.C. 2315.19. Since Byer's negligence *Page 11 
claim was erroneously rejected on legal rather than purely factual grounds, whether Byer can sustain her burden of proof on that issue remains to be decided by the trial court and/or a jury.
 {¶ 40} Accordingly, Beyer's sole assignment of error has merit.
 {¶ 41} The judgment of the trial court is hereby reversed and this matter is remanded for a new trial applying the liability standard of general negligence, not recklessness as was done in the first trial, according to law and consistent with this court's opinion.
Vukovich, P.J., concurs. DeGenaro, J., concurs. *Page 1