[Cite as *Rawlins v. Cleveland Indians Baseball Co., Inc.*, 2015-Ohio-4587.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102574**

# KEITH RAWLINS, INDIVIDUALLY, ETC.

PLAINTIFF-APPELLANT

vs.

# CLEVELAND INDIANS BASEBALL COMPANY, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-817538

**BEFORE:** Jones, P.J., McCormack, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 5, 2015

**ATTORNEYS FOR APPELLANT**

Paul Keneally
Colin Ramsey
Underberg & Kessler L.L.P.
300 Bausch & Lomb Place
Rochester, New York 14604

Sandra M. Kelly
Christopher D. Kuebler
Ray, Robinson, Carle & Davies P.L.L.
6480 Rockside Woods Blvd., South
Suite 300
Cleveland, Ohio 44131


**ATTORNEYS FOR APPELLEES**

Todd C. Hicks
Daniel Cronin
J. Jaredd Flynn
Thrasher, Dinsmore & Dolan
100 7th Avenue
Suite 150
Chardon, Ohio 44024

Mary Jane Trapp
Thrasher, Dinsmore & Dolan
1400 West Sixth Street
Suite 400
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} The plaintiff-appellant in this case is Keith Rawlins in his individual capacity, and as next friend and natural guardian of his minor daughter, Jenna Rawlins. He appeals from the trial court's January 20, 2015 judgments that (1) denied his motion for partial summary judgment and (2) granted the motion for summary judgment of defendants-appellees Cleveland Indians Baseball Company, Inc. and Cleveland Indians Baseball Company (collectively "the Cleveland Indians"). We reverse and remand.

## I. Procedural History

{¶2} In November 2013, Rawlins filed this action against the Cleveland Indians, Lawrence Dolan, the Cleveland Indians Club, and Major League Baseball Enterprises, Inc. In December 2013, he dismissed the Cleveland Indians Club, Dolan, and Major League. The action resulted from injuries Rawlins sustained after he was hit by a foul ball while at an Indians game.

{¶3} In November 2014, the Cleveland Indians filed a motion for summary judgment, contending that the action was barred by primary assumption of the risk. Rawlins filed a motion for partial summary judgment, seeking to have the Cleveland Indians' defense of primary assumption of the risk dismissed. In January 2015, the trial court denied Rawlins's motion for partial summary judgment and granted the Cleveland Indians' motion for summary judgment.

## II. Facts

{¶4} On July 20, 2012, Rawlins was injured when he was hit by a foul ball at a Cleveland Indians home game against the Baltimore Orioles. His daughter, Jenna, attended the game with him and sought damages based on her emotional distress from witnessing the incident.

{¶5} The record demonstrates that there were post-game fireworks that evening. By order of the Cleveland Fire Department, certain sections of the spectator area were required to be closed for post-game firework shows. Specifically, sections 170-179 were subject to the closure requirement. The tickets Rawlins purchased were for seats located on the third-base side of the field in section 171 and, therefore, were subject to the closure for the post-game fireworks show.

{¶6} Signs notified spectators of the fireworks show that was to take place after the game that evening. Signs on the concourse read: "FIREWORKS TONIGHT. SECTIONS 170-179 WILL BE CLEARED AT THE CONCLUSION OF THE GAME." The message was also announced over the public address system and put on the scoreboard several times throughout the game. Rawlins testified that he was aware of the post-game fireworks show when he purchased his tickets, and stated that the show was one of the reasons he and Jenna attended the game.

{¶7} Additionally, each ticket for a Cleveland Indians home game contained the following warning:

> WARNING: The holder assumes all risk and danger incidental to the baseball game ("Game") including all activities or events before, during or after the baseball game ("Game Events") including, but not limited to, the danger of being injured by equipment or on-field personnel entering the

spectator areas, and consents, to the furthest extent permitted by law, that the Cleveland Indians, all entities and affiliates associated with Major League Baseball together with their respective agents, players, officers, employees and owners shall not be liable for injuries or loss of personal property resulting from such causes and/or any accidents or incidents associated with crowds of people.

{¶8} Signs throughout the spectator seating areas of the ballpark also warned spectators to "BE ALERT — OBJECTS MAY ENTER SEATING AREA AND CAUSE INJURY." Further, prior to the start of the game, the Cleveland Indians make a warning announcement over the public address system and on its scoreboard.

{¶9} After purchasing their tickets, Rawlins and Jenna proceeded to section 171 and sat in their row. They were later asked to move by a spectator who told them they were in his seats. The Rawlinses moved over a few seats in the same row and section; they did not confirm that they were in their correct seats. According to Jenna, they were probably in the wrong seats, but did not move because they had a good view.

{¶10} Around the seventh inning, Rawlins overheard a woman on her cell phone in the row behind him say "they're closing down the section for the fireworks. We're gonna have to move." Rawlins also saw an usher and nearby spectators talking, but he could not hear what was being said.

{¶11} When the eighth inning started, the Cleveland Indians were losing 10-2, and Rawlins saw spectators leaving who were sitting in the area where he and Jenna were. At the close of the eighth inning, the score was still 10-2, Baltimore.

{¶12} In the complaint, Rawlins alleged that at the top of the ninth inning an usher ordered them to immediately vacate their seats. At deposition, Rawlins testified that

shortly after the inning started, an usher came to the end of the row where he and Jenna were seated and "just stood there with her arms folded" "or hands on her hips" and stared at him. According to Rawlins, he felt compelled to move, but admitted that no usher or other stadium personnel verbally told him they had to move. Jenna likewise testified that she did not recall being ordered or directed to move.

{¶13} Nonetheless, Rawlins and Jenna left their seats at the top of the ninth inning and were walking up the stairs when Rawlins was struck by a foul ball. Rawlins maintains that the accident occurred because they were ordered out of their seats due to the post-game fireworks show. In the complaint, Rawlins sought relief based on claims of negligence and breach of contract.

{¶14} The Cleveland Indians, on the other hand, contend that the Rawlinses voluntarily left their seats and the doctrine of primary assumption of the risk is a complete bar to their negligence claims. The Cleveland Indians further contend that Rawlins's breach of contract claim fails because (1) they did not sit in the seats for which they purchased tickets; (2) the waiver in the contract (i.e., the tickets) incorporates the primary assumption of the risk doctrine; and (3) the issue was not subject to the summary judgment proceedings in the trial court.

{¶15} Rawlins assigns the following as error in the trial court's decision to deny their partial summary judgment motion and grant the summary judgment motion of the Cleveland Indians:

> 1. The lower court erred in apparently concluding that Defendants-Respondents'[sic] firework show and concomitant evacuation

was an "inherent" part of the game of baseball.

2. The lower court erred in apparently concluding that the Baseball Rule applies to when a fan is injured during a fireworks evacuation.

3. The lower court erred in apparently applying the tort-based Baseball Rule defense to Plaintiffs-Appellants' breach of contract claim.

## III. Law and Analysis

**Standard of Review**

{¶16} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. *Id.*

{¶17} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The

nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**Negligence and the "Baseball Rule"**

{¶18} In Ohio, to maintain an action for negligence a plaintiff has the burden of establishing by a preponderance of the evidence that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the breach. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). When a defendant shows, however, that the plaintiff assumed the risk of injury through participating in an inherently dangerous activity, the duty of care is eliminated. *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431, 659 N.E.2d 1232 (1996) ("[A] plaintiff who primarily assumes the risk of a particular action is barred from recovery as a matter of law.").

{¶19} Ohio recognizes three different variations of the common law affirmative defense of assumption of risk: express, primary, and secondary/implied. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 11. Primary assumption of risk, which relieves the defendant of the duty of care and defeats the plaintiff's prima facie negligence case, has historically been applied in cases involving sporting events, and has come to be known as the "baseball rule". *Cincinnati Baseball*

*Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925). In *Eno*, the court analyzed a

number of cases decided in other states involving injuries resulting from baseballs that

traveled into the bleachers during the game. The court acknowledged that baseball is an

inherently dangerous activity and that the spectator is in the best position to protect him or

herself from injury at a baseball game:

> The consensus of the above opinions is to the effect that it is common
>
> knowledge that in baseball games hard balls are thrown and batted with great
>
> swiftness, that they are liable to be thrown or batted outside the lines of the
>
> diamond, and that spectators in positions which may be reached by such
>
> balls assume the risk thereof. This theory is fortified by the fact that such
>
> spectators can watch the ball and can thus usually avoid being struck when a
>
> ball is directed toward them.
>
> It is the general rule, also, so far as screening the grand stand is concerned,
> that due care on the part of the management does not require all of the
> spectators to be screened in; that the management performs its duty toward
> the spectators when it provides screened seats in the grand stand and gives
> spectators the opportunity of occupying them.[1]

*Id.* at 180-181.

{¶20} However, unlike the spectators in the cases analyzed by the Ohio Supreme

Court, the spectator in *Eno* was injured during the intermission of a double-header. The

---

[1] *See also Harting v. Dayton Dragons Baseball Club, L.L.C.*, 171 Ohio App.3d 319, 2007-Ohio-2100, 870 N.E.2d 766, ¶ 16 (2d Dist.)(Because of the danger inherent to attending baseball games, courts require that ballparks be equipped with some screened seats that gives spectators the opportunity of occupying them). The record here demonstrates that the ballpark offered screened seats and, further, that other seats at the ballpark were out of the range of foul balls.

baseball that struck the spectator was hit by a player practicing near the unscreened portion of the grandstand. The Ohio Supreme Court concluded that the facts in *Eno* presented a materially different situation from the general rule, and there was a question of fact whether the stadium owner performed its duty when it allowed players to practice in close proximity to the grandstand during an intermission when the scheduled games were not being played. *Id.* at 182-183.

{¶21} The Ohio Supreme Court revisited the *Eno* case in 1996 in *Gallagher*, 74 Ohio St.3d 427, 659 N.E.2d 1232. The *Gallagher* court observed that primary assumption of the risk is a defense of "extraordinary strength," *id.* at 431, and, "a trial court must proceed with caution when contemplating whether primary assumption of the risk completely bars a plaintiff's recovery." *Id.* at 432.

{¶22} The court distinguished primary assumption of the risk and implied assumption of the risk as follows:

> *Eno* demonstrates that only those risks directly associated with the activity in question are within the scope of primary assumption of the risk, so that no jury question would arise when an injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff from that specific risk. In many situations, as in *Eno*, there will be attendant circumstances that raise questions of fact whether an injured party assumed the risk in a particular situation. In that case, the doctrine of implied assumption of the risk, not primary assumption of the risk, would be applicable.

*Id.*

{¶23} Rawlins's motion for partial summary judgment sought dismissal of the Cleveland Indians' affirmative defense of primary assumption of the risk. Rawlins

contended that their being ordered to vacate their seats for the fireworks show constituted an attendant circumstance, not inherent to the game of baseball and, therefore, primary assumption of the risk was not applicable. They relied on the deposition testimony of two spectators who were at the game in question. One spectator testified that, although he did not hear ushers verbally tell spectators to move, he saw the ushers gesturing prior to the conclusion of the game, and spectators moving prior to the conclusion of the game. The second spectator testified that an usher verbally told him that he and his family had to leave their seats prior to the conclusion of the game, which they did. The spectator further testified that another spectator seated in front of him got into an argument with an usher after being asked to leave his seats prior to the conclusion of the game.

{¶24} In the Cleveland Indians' motion for summary judgment, it contended that primary assumption of the risk was applicable because Rawlins's injuries were the "direct result of a foul ball entering into the stands during a baseball game," and "[s]uch a risk is directly associated with the baseball game." The Indians further contended that the record failed to demonstrate that the Rawlinses were ordered or evacuated from their seats, and provided affidavits from several spectators who were seated in the area to be evacuated after the game who averred that they were not ordered to leave prior to the conclusion of the game. Moreover, the Indians contended that primary assumption of the risk was still applicable even if the Rawlinses had been ordered to move from their seats prior to the conclusion of the game, citing case law applying the baseball rule in a situation where a spectator was distracted by nonbaseball events. Specifically, the Indians cited

*Harting*, 171 Ohio App.3d 319, 2007-Ohio-2100, 870 N.E.2d 766.

{¶25} In *Harting*, a spectator was struck by a foul ball during a game. She contended that the baseball team and its mascot negligently distracted her during the game. According to the spectator, there was at least a genuine issue of fact as to whether the distraction caused by the mascot absolved her of her obligation to be on watch for foul balls. The Second Appellate District held that it did not, and applied the doctrine of primary assumption of the risk to the case, stating the following:

> * * * team mascots and their antics are a common phenomena, and the mascots are normally present during the entire course of the game. In many cases, the team mascots are more popular than the team itself. Simply because the Chicken appeared while the game was being played does not absolve Harting from the duty to protect herself from the ordinary risks inherent in the sport. As noted by the Dragons, Harting knew the game was still in play, and she was aware that a batter was at the plate. Thus, she had a duty to be on the lookout for errant balls entering the stands.

*Id.* at 324-325.

{¶26} In light of the above, we must consider whether (1) the Rawlinses were ordered from their seats and (2) if they were ordered from their seats, if that act constituted an attendant circumstance. In regard to the first consideration, whether the Rawlinses were ordered from their seats, we find that a genuine issue of material fact exists. Although Rawlins admitted that no Cleveland Indians' personnel explicitly told them to move, he testified that he felt compelled to move because of an usher's behavior toward them. Moreover, he submitted evidence indicating that other spectators in the general area were explicitly ordered to move prior to the conclusion of the game.

{¶27} In regard to the second consideration, whether ordering the Rawlinses to

move, if that in fact did occur, created an attendant circumstance, we likewise find that there remains a genuine issue of fact. It has been held that under the assumption of the risk doctrine, the sponsor of a sporting event has a duty "'not to increase the risk of harm over and above the inherent risk of the sport.'" *Bundschu v. Naffah*, 147 Ohio App.3d 105, 113, 2002-Ohio-607, 768 N.E.2d 1215 (7th Dist.), quoting *Am. Golf Corp. v. Superior Ct. of Los Angeles Cty.*, 79 Cal. App.4th 30, 37 (2000).

**{¶28}** Our finding that there is a genuine issue of material fact is based on the circumstance of this case. Spectators at sporting events routinely leave their seats — to go to the restroom or purchase concessions, for example — and are still subject to the doctrine of primary assumption of the risk. But a different circumstance may be created when spectators are forced to leave their seats for a non-emergency or unjustified reason. We find that on the record in this case, a genuine issue of material fact exists and the trial court, therefore, erred in granting summary judgment in favor of the Cleveland Indians.

**{¶29}** In light of the above, we sustain the first two assignments of error and decline to consider the third assignment of error because it was not first decided in the trial court.

**{¶30}** Judgment reversed; case remanded for further proceedings.

It is ordered that appellants recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

____

LARRY A. JONES, SR., PRESIDING JUDGE

TIM McCORMACK, J., and
MARY J. BOYLE, J., CONCUR